**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| VIVA CRAPE, YOLANDA PERKINS, and DAVID MURRELL, Plaintiffs, | ) | |
| v. | ) | Case No. 2:26-cv-2169 |
| WISDOM, INC., Defendant. | ) | |

# COMPLAINT

NOW COME the Plaintiffs, Yolanda Perkins, Viva Crape, and David Murrell, by and through their legal counsel, Attorney David L. Carlson of Eau Claire Legal, LLC, and for their Complaint against Defendant WISDOM, Inc., state and allege as follows:

## I. INTRODUCTION

1. This action arises from a pattern of alleged racial discrimination and retaliation within WISDOM, Inc., a nonprofit organization whose stated mission includes advancing social justice, racial equity, and the interests of marginalized communities. Plaintiffs Yolanda Perkins, Viva Crape, and David Murrell are Black professionals who served WISDOM in leadership, administrative, and community advocacy roles central to that mission. Despite their experience and contributions, Plaintiffs allege that WISDOM's governing leadership subjected them to unequal compensation, diminished professional authority, exclusion from organizational decision-making, and disproportionate criticism for institutional failures beyond their control.

2. The alleged discrimination became particularly apparent during WISDOM's 2025 leadership transition, when its Interim Executive Director informed Plaintiffs that the organization's governing leadership wanted to remove Black employees from its Milwaukee office. Plaintiffs allege that this statement was consistent with an established pattern in which Black employees were assigned substantial responsibilities without corresponding compensation, authority, or institutional support, while their professional competence was questioned and organizational shortcomings attributed to them. When concerns were raised, Plaintiffs allege that WISDOM failed to address the discriminatory conditions and instead permitted further intimidation, professional disparagement, and retaliatory treatment.

3. Plaintiffs bring this action to remedy the resulting violations of their federally protected employment and contractual rights, including intentional race discrimination, discriminatory compensation, racially hostile working conditions, and retaliation, together with related injuries arising under Wisconsin law.

## II. PARTIES

4. Plaintiff Yolanda Perkins ("Perkins") is an adult resident of the State of Wisconsin, residing at 3292 N. 47th Street, Milwaukee, Wisconsin 53216. Perkins is a Black woman who was employed by Defendant WISDOM, Inc. beginning in approximately 2018, serving in various leadership capacities, including Associate Director and Integrated Voter Engagement Director, until her resignation effective August 31, 2025.

5. Plaintiff Viva Crape ("Crape") is an adult resident of the State of Wisconsin, residing at 6520 W. Silver Spring Drive, Milwaukee, Wisconsin 53218. Crape is a Black woman who began employment with Defendant WISDOM, Inc. in approximately September 2023, serving as

Administrative Director and performing operational, administrative, payroll, and financial coordination responsibilities.

6. Plaintiff David Murrell ("Murrell") is an adult resident of the State of Wisconsin, residing at 2812 N. 5th Street, Apartment 501, Milwaukee, Wisconsin 53212. Murrell is a Black man who began employment with Defendant WISDOM, Inc. in approximately 2023, serving as Prison Outreach Director and performing community organizing, criminal justice advocacy, and outreach responsibilities.

7. Defendant WISDOM, Inc. ("WISDOM") is a Wisconsin nonprofit, non-stock corporation organized under the laws of the State of Wisconsin on November 23, 1999, and registered with the Wisconsin Department of Financial Institutions under Entity No. W040259. WISDOM maintains its principal office at 2821 N. Vel R. Phillips Avenue, Suite 123, Milwaukee, Wisconsin 53212. At all times relevant to this action, WISDOM employed Plaintiffs and exercised authority over their compensation, assignments, supervision, working conditions, and other terms and conditions of employment.

8. During the relevant statutory periods, WISDOM employed at least fifteen employees for twenty or more calendar weeks in the current or preceding calendar year and was an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

9. WISDOM Action Network, Inc. ("WAN") is a Wisconsin nonprofit corporation affiliated with WISDOM, Inc., but legally distinct from it. Following her separation from WISDOM, Perkins served as Interim Executive Director of WAN. WAN is not presently named as a defendant in this action.

## III. JURISDICTION / VENUE

10. This Court has subject-matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.
11. This Court has jurisdiction over Plaintiffs' claims arising under Title VII pursuant to 42 U.S.C. § 2000e-5(f)(3), and jurisdiction over Plaintiffs' claims arising under 42 U.S.C. § 1981 pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).
12. To the extent Plaintiffs assert claims arising under Wisconsin law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same common nucleus of operative facts as Plaintiffs' federal claims and form part of the same case or controversy under Article III of the United States Constitution.
13. This Court has personal jurisdiction over Defendant WISDOM, Inc. because Defendant is incorporated under the laws of Wisconsin, maintains its principal office in Milwaukee, Wisconsin, and conducted the employment activities giving rise to Plaintiffs' claims within this State.
14. Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred, in substantial part, in Milwaukee County, Wisconsin, within this judicial district.
15. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendant resides within this judicial district for venue purposes and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

16. Plaintiff Yolanda Perkins timely filed a Charge of Discrimination against Defendant WISDOM, Inc. with the Equal Employment Opportunity Commission ("EEOC"), assigned Charge No. 443-2026-01057. On August 27, 2026, the EEOC issued Perkins a Notice of Right to Sue, terminating its administrative processing of the charge.

17. Plaintiff Viva Crape timely filed a Charge of Discrimination against Defendant WISDOM, Inc. with the EEOC, assigned Charge No. 443-2026-01062. On August 27, 2026, the EEOC issued Crape a Notice of Right to Sue, terminating its administrative processing of the charge.

18. Plaintiff David Murrell timely filed a Charge of Discrimination against Defendant WISDOM, Inc. with the EEOC, assigned Charge No. 443-2026-01065. On August 27, 2026, the EEOC issued Murrell a Notice of Right to Sue, terminating its administrative processing of the charge.

19. Plaintiffs have satisfied the administrative prerequisites to bringing their respective Title VII claims against Defendant WISDOM, Inc., including filing charges with the EEOC and receiving Notices of Right to Sue, and bring this action within 90 days of receipt of their respective notices.

## IV. FACTUAL ALLEGATIONS

### A. Wisdom's organizational structure, decision-making authority, and alleged discriminatory employment practices

20. WISDOM is a Wisconsin nonprofit organization engaged in statewide community organizing, criminal justice reform, voter engagement, and related advocacy through its Milwaukee administrative office and statewide Affiliate network.

21. WISDOM operated through a Board of Directors, Executive Committee, and executive leadership responsible for organizational policy, employee supervision, compensation, staffing decisions, and financial oversight.

22. David Liners served as Executive Director until June 30, 2025. Kina Collins became Interim Executive Director in approximately May 2025, and Reverend Kathleen Gloff served as President of WISDOM's Executive Committee during the relevant period.

23. WISDOM's executive and governing leadership exercised authority over the challenged employment decisions. On July 15, 2024, Liners issued an employment offer to Sara Williams establishing her compensation, benefits, and supervisory arrangements, with copies provided to Perkins and Crape.

24. Plaintiffs Perkins, Crape, and Murrell are Black employees or former employees who performed leadership, administrative, and community advocacy responsibilities within WISDOM's Milwaukee operations.

25. During WISDOM's 2025 leadership transition, Interim Executive Director Kina Collins informed Plaintiffs that WISDOM's governing leadership wanted Black employees removed from the Milwaukee office and that she intended to prevent their removal.

26. In July 2025, Collins discussed the "Glass Cliff Theory" with Perkins and Crape, describing circumstances in which Black women were placed in precarious leadership positions and subsequently blamed for institutional failures. Collins stated, "It's what they set me up for and have been doing to y'all."

27. Plaintiffs allege that these statements were consistent with unequal compensation, interference with assigned supervisory authority, reduced access to leadership, and disproportionate criticism for organizational deficiencies. WISDOM's leadership knew of complaints concerning these practices but failed to remedy the alleged discriminatory treatment.

28. In November 2025, WISDOM employees and Affiliate representatives sought to participate in a meeting concerning payroll difficulties, employment security, and organizational decisions

affecting staff. Executive Committee President Kathleen Gloff warned WISDOM employees that attending the meeting without Executive Committee authorization would be treated as a conflict of interest and a lapse in professional judgment carrying consequences.

29. The warning occurred while WISDOM was considering employee furloughs and after Collins had reported that governing leadership wanted Black Milwaukee employees removed. Following the warning, WISDOM employees did not participate in the meeting.

30. On December 22, 2025, Plaintiffs Perkins, Crape, and Murrell, through counsel, formally notified WISDOM's executive and governing leadership of their claims concerning racial discrimination, unequal employment treatment, racial stereotyping, and the reported targeting of Black Milwaukee employees for removal. The notice was directed to Interim Executive Director Kina Collins, Executive Committee President Kathleen Gloff, and members of WISDOM's Executive Committee.

31. The December 22 correspondence demanded that WISDOM cease the challenged conduct, refrain from retaliating against Plaintiffs, and preserve records relevant to anticipated litigation. WISDOM's leadership was therefore expressly informed of Plaintiffs' opposition to alleged racial discrimination before the subsequent workplace restrictions.

32. On December 23, 2025, one day after receiving the discrimination notice, WISDOM issued a directive requiring employees to transition immediately to remote work, surrender their office keys, and refrain from entering the Milwaukee office without Executive Committee authorization.

33. The Milwaukee office had been used by Plaintiffs Perkins, Crape, and Murrell, all of whom are Black. Crape and Murrell remained employed by WISDOM when the directive was issued. Plaintiffs allege that the timing of the restriction, together with the earlier statements attributed

to Collins concerning the removal of Black Milwaukee employees, supports an inference that the restriction was imposed in retaliation for their protected opposition to racial discrimination.

34. On December 23, 2025, Plaintiffs' counsel sent WISDOM a further written notice addressing the office closure, reiterating WISDOM's preservation obligations, and requesting information concerning the custody of organizational records and employees' access to necessary materials.

35. Crape and Perkins filed EEOC charges on December 26, 2025, and Murrell filed his charge on December 27, 2025. These charges formally alleged discriminatory treatment and retaliation arising from WISDOM's employment practices.

**B. Yolanda Perkins – Discriminatory Treatment, Interference with Supervisory Authority, and Racially Hostile Working Conditions**

36. Perkins began employment with WISDOM in approximately 2018 and served as Associate Director and Integrated Voter Engagement Director. She supervised organizers, coordinated statewide voter engagement initiatives, managed Affiliate relationships, and oversaw program implementation.

37. Beginning in approximately 2019, employees and Affiliate representatives repeatedly bypassed Perkins by communicating directly with Executive Director David Liners concerning matters under her supervision. Perkins complained that this interference undermined her assigned authority and reflected discriminatory treatment.

38. On February 15, 2022, Liners acknowledged in writing that Perkins had been excluded from communications concerning integrated voter engagement activities and directed the employees involved to include her. On July 15, 2024, WISDOM issued an employment offer requiring newly hired Affiliate Liaison Sara Williams to participate in weekly supervisory meetings with

Liners and Perkins. Perkins alleges that interference with her recognized authority nevertheless continued.

39. Following Collins's appointment in May 2025, Collins informed Perkins that white organizers and organizational representatives had described Perkins as “ghetto,” questioned her work ethic, and challenged her professional competence. Perkins alleges that these characterizations reflected racial stereotypes concerning Black women exercising leadership authority.

40. Perkins alleges that white employees and Affiliate representatives were permitted to bypass or challenge her authority without comparable professional criticism or consequences.

41. Perkins repeatedly raised concerns with WISDOM leadership regarding racial stereotyping, exclusion from communications, and interference with her supervisory responsibilities. She alleges that leadership failed to remedy the conduct.

42. On August 11, 2025, Perkins submitted a resignation letter to WISDOM's Executive Director and Executive Committee, effective August 31, 2025. The letter expressly identified racism, microaggressions, racialized characterizations of Black employees, and interference with her responsibilities.

43. Perkins alleges that the discriminatory treatment impaired her supervisory authority, diminished her professional standing, and contributed to her resignation and resulting injuries.

### C. Viva Crape – Discriminatory Compensation, Unequal Employment Conditions, and Adverse Employment Actions

44. Crape began employment with WISDOM in September 2023 as Administrative Director, responsible for office administration, payroll coordination, employee benefits, personnel records, and communications with statewide Affiliates.

45. In July 2024, Executive Director David Liners terminated WISDOM's outside accounting services. Crape subsequently assumed additional invoicing, payroll, and financial-documentation responsibilities involving approximately 30 to 37 employees across WISDOM's network.

46. WISDOM's November 15, 2024 payroll journal reflects an annualized base salary of approximately $56,180 for Crape. By comparison, Affiliate Liaison Sara Williams received a starting salary of $60,000, Mark Rice received approximately $60,000 annually, and Amanda Ali received approximately $69,424 annually. Crape alleges that her compensation undervalued her administrative responsibilities and expanded financial workload relative to certain non-Black employees.

47. Following Collins's appointment as Interim Executive Director, Crape experienced less direct supervisory engagement than certain non-Black employees, including Connor Williams. She was also denied permission to attend an organizing event in Washington, D.C., because of asserted financial constraints.

48. During July 2025 Executive Committee meetings, WISDOM's leadership discussed financial deficiencies involving cash flow, Affiliate invoices, accounting reconciliation, and budget controls. These difficulties involved organizational decisions and responsibilities extending beyond Crape's individual authority.

49. In November 2025, Collins instructed Crape to distribute payroll instructions directing Affiliate treasurers to pay employees directly. Crape prepared the communication but withheld distribution because it did not adequately address payroll taxes, withholding obligations, and benefits. She informed Executive Committee President Kathleen Gloff and requested further direction.

50. On approximately November 11, 2025, Collins distributed a statewide communication accusing Crape of disregarding instructions, engaging in “consistent undermining and lack of professionalism,” and contributing to incorrect or late Affiliate invoices. Crape alleges that the communication omitted her request for guidance and improperly attributed longstanding organizational deficiencies to her.

51. On December 22, 2025, Crape, through counsel, joined Perkins and Murrell in formally notifying WISDOM's executive and governing leadership of alleged racial discrimination and demanding that the conduct cease. The following day, WISDOM restricted access to the Milwaukee office used by Crape and Murrell, requiring employees to work remotely and surrender their office keys. Counsel immediately objected to the restriction and reiterated WISDOM's obligation to preserve relevant records. On December 26, 2025, Crape filed EEOC Charge No. 443-2026-01062 alleging racial discrimination and retaliation.

52. On February 3, 2026, Crape participated in a recorded meeting with WISDOM leadership concerning financial records, payroll, benefits, and administrative responsibilities. During the meeting, leadership acknowledged that Crape lacked final authority over certain organizational financial decisions. Crape also described difficulties obtaining records controlled or maintained through executive leadership.

53. On March 21, 2026, WISDOM issued Crape a disciplinary communication concerning attendance at an out-of-state training without the authorization WISDOM asserted was required. The communication, signed by Marilyn Miller and Nikki Fisher, warned that further violations could result in dismissal. Crape disputes the stated grounds for the discipline.

54. On March 26, 2026, Crape, through counsel, prepared a written response to WISDOM's EEOC position statement, further identifying alleged racial discrimination, compensation disparities, unequal employment treatment, and retaliatory conduct.

55. On June 15, 2026, WISDOM terminated Crape's employment effective immediately through a written notice signed by Co-Executive Directors Marilyn Miller and Nikki Fisher. The notice attributed the termination to “ongoing performance issues and violations of company policies” but did not identify the specific incidents or policies underlying those conclusions.

56. Before terminating Crape, WISDOM's executive leadership, including Co-Executive Directors Marilyn Miller and Nikki Fisher, had received notice of her discrimination allegations and EEOC proceedings. Crape alleges that the subsequent disciplinary and termination decisions were made with knowledge of her protected activity and were motivated by her opposition to racial discrimination.

57. WISDOM disciplined Crape after receiving the December 22, 2025 discrimination demand and after Crape filed her December 26, 2025 EEOC charge. WISDOM subsequently terminated Crape after she challenged its denial of discrimination in the administrative proceedings. Crape alleges that the timing and circumstances of these actions, considered together with her preceding treatment, support an inference of retaliation for protected opposition to racial discrimination.

58. Crape disputes WISDOM's stated justification for her discharge and alleges that the decision reflected the continuing discriminatory and retaliatory treatment described above. She further alleges that WISDOM attributed organizational financial and administrative deficiencies to her despite leadership's knowledge of longstanding operational problems and decisions outside her final authority.

59. As a result of her termination, Crape lost her employment, compensation, and employment benefits and suffered additional economic and noneconomic injuries.

**D. David Murrell – Discriminatory Compensation, Unequal Employment Conditions, and Racially Hostile Treatment**

60. Murrell began employment with WISDOM in approximately 2023 as Prison Outreach Director. His responsibilities included criminal justice advocacy, community organizing, and outreach to formerly incarcerated and justice-impacted individuals. His professional and lived experience was directly relevant to those responsibilities.

61. Before retiring in June 2025, Executive Director David Liners expressed satisfaction with Murrell's performance, supported an increase in his compensation, and indicated that he wanted Murrell to remain with WISDOM for approximately five additional years.

62. WISDOM's payroll journals reflect that Murrell received an annualized base salary of approximately $42,500 during February and March 2024, increasing to approximately $50,000 by April 2024. During November 2024, Mark Rice, a white Transformational Justice Coordinator, received approximately $60,000 annually.

63. Murrell and Rice performed related criminal justice reform functions. Murrell's responsibilities emphasized direct outreach and engagement with justice-impacted communities, while Rice's responsibilities included statewide coordination, public events, legislative engagement, and advocacy. Murrell alleges that differences in qualifications, experience, and assigned duties did not adequately explain the $10,000 compensation disparity.

64. WISDOM also offered newly hired Affiliate Liaison Sara Williams an annual starting salary of $60,000 in July 2024. Murrell alleges that WISDOM's compensation decisions undervalued his experience and responsibilities relative to certain non-Black employees.

65. Following Collins's appointment as Interim Executive Director, Murrell received limited direct supervisory engagement while certain non-Black employees, including Connor Williams, received more regular executive communications.

66. Murrell's outreach responsibilities required contact with individuals affected by incarceration and related challenges. Organizational representatives criticized the presence of certain community members visiting Murrell's office and questioned the professionalism of the Milwaukee staff. Murrell alleges that these criticisms failed to account for the nature of his assigned work.

67. After learning of the reported proposal to remove Black Milwaukee employees, Murrell questioned Collins and requested a meeting with governing leadership. Collins indicated that she would arrange a meeting, but the subsequent discussion focused on organizational finances and did not substantively address the reported targeting of Black employees.

68. Murrell was among the employees represented in the December 22, 2025 discrimination notice to WISDOM leadership. The following day, WISDOM restricted access to the Milwaukee office where he performed his responsibilities. Murrell alleges that the restriction followed his opposition to the alleged targeting of Black employees.

69. The office restriction interfered with Murrell's ability to conduct in-person outreach, meet with justice-impacted community members, and access work materials necessary to perform his assigned responsibilities. Murrell alleges that these restrictions materially altered his working conditions immediately after he opposed the reported targeting of Black Milwaukee employees.

70. Murrell alleges that WISDOM's discriminatory compensation and unequal employment treatment caused economic losses, diminished professional opportunities, and emotional distress.

### E. Yolanda Perkins – Post-Employment Conduct, WAN Funding Dispute, and Alleged Retaliation

71. Following her resignation from WISDOM effective August 31, 2025, Perkins continued working in nonprofit leadership, including as Interim Executive Director of WISDOM Action Network, Inc. ("WAN"), a legally distinct but affiliated organization.
72. During October and November 2025, WISDOM experienced financial difficulties and sought approximately $200,000 from WAN to support payroll and operating expenses.
73. Perkins participated in WAN's consideration of the proposed financial assistance and raised concerns concerning the authorization and permissible use of WAN funds, including whether those funds should compensate Interim Executive Director Kina Collins while Collins was pursuing federal elected office.
74. WAN representatives proposed providing financial assistance subject to conditions involving organizational oversight, transitional leadership, and restrictions on using WAN funds for Collins's compensation. WISDOM's Executive Committee declined the proposed arrangement at that time, citing unresolved financial and organizational concerns.
75. In November 2025, WISDOM Executive Committee President Kathleen Gloff distributed communications to WISDOM employees and statewide Affiliate representatives attributing the organization's payroll difficulties to WAN leadership's failure to release approximately $200,000. At the time, Perkins served as WAN's Interim Executive Director, and recipients familiar with WAN's leadership could associate the communications with her.

76. Before these communications, Perkins had expressly complained to WISDOM's executive and governing leadership about racial discrimination, including through her August 11, 2025 resignation letter. WISDOM's leadership received that correspondence and knew that Perkins had challenged the organization's treatment of Black employees.

77. Perkins alleges that the communications portrayed her as responsible for WISDOM's inability to meet payroll while omitting WISDOM's rejection of WAN's conditional funding proposal. She alleges that the communications harmed her professional standing within the statewide organizing network and were intended to penalize her for opposing racial discrimination during her WISDOM employment. Perkins alleges that she became the target of criticism by her colleagues in the Wisdom Affiliate Network due to being portrayed as responsible for the payroll delay.

78. WAN subsequently authorized the release of approximately $200,000 to WISDOM in December 2025.

## V. CAUSES OF ACTION

### COUNT 1 – INTENTIONAL RACE DISCRIMINATION AND DISPARATE TREATMENT (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1))

**Plaintiffs Yolanda Perkins, Viva Crape, and David Murrell against Defendant WISDOM, Inc.**

79. Plaintiffs reallege and incorporate by reference paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80. Plaintiffs are Black employees or former employees of WISDOM who were qualified for their respective positions.

81. WISDOM subjected Plaintiffs to less favorable terms, conditions, and privileges of employment because of race. Perkins experienced repeated interference with her recognized supervisory authority and racialized criticism of her professional competence. Crape and Murrell received allegedly discriminatory compensation and unequal professional treatment, and WISDOM terminated Crape's employment on June 15, 2026.

82. Plaintiffs allege that WISDOM's treatment was motivated by race, as supported by the reported statements concerning removal of Black Milwaukee employees, racialized criticism, compensation disparities, and the circumstances surrounding the challenged employment decisions.

83. WISDOM thereby violated Title VII, causing Plaintiffs individualized economic and noneconomic injuries.

**COUNT 2 – RACE DISCRIMINATION IN COMPENSATION (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1))**

**Plaintiffs Viva Crape and David Murrell against Defendant WISDOM, Inc.**

84. Plaintiffs reallege and incorporate by reference paragraphs 1 through 78 of this Complaint as though fully set forth herein.

85. WISDOM compensated Crape and Murrell less favorably than certain non-Black employees whose positions, qualifications, responsibilities, and compensation arrangements provide relevant comparisons, as described in the preceding factual allegations.

86. WISDOM's payroll records and employment agreements establish the challenged compensation differences. Plaintiffs allege that WISDOM undervalued their respective responsibilities and experience while compensating non-Black employees more favorably.

87. Plaintiffs allege that race was a motivating factor in the challenged compensation decisions, resulting in discriminatory compensation prohibited by Title VII.

88. Plaintiffs suffered compensable economic losses, including proven wage differentials and associated employment benefits.

**COUNT 3 – RACIALLY HOSTILE WORK ENVIRONMENT (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1))**

**Plaintiffs Yolanda Perkins, Viva Crape, and David Murrell against Defendant WISDOM, Inc.**

89. Plaintiffs reallege and incorporate by reference paragraphs 1 through 78 of this Complaint as though fully set forth herein.

90. Plaintiffs experienced unwelcome conduct they allege was motivated by race, including racial stereotyping, interference with professional authority, unequal supervisory treatment, and statements concerning the proposed removal of Black Milwaukee employees.

91. The alleged conduct occurred over time and, considered in its totality, was sufficiently severe or pervasive to create an objectively and subjectively hostile working environment because of race.

92. WISDOM's executive and governing leadership knew of the challenged conduct, including through employee complaints and statements by Interim Executive Director Collins, but failed to take effective corrective action.

93. The conduct altered Plaintiffs' working conditions and caused individualized emotional and professional injuries, in violation of Title VII.

**COUNT 4 – RETALIATION (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a))**

**Plaintiffs Viva Crape, David Murrell and Yolanda Perkins against Defendant WISDOM, Inc.**

94. Plaintiffs reallege and incorporate by reference paragraphs 1 through 78 of this Complaint as though fully set forth herein.

95. Plaintiffs engaged in protected opposition to racial discrimination affecting their employment. Perkins complained to WISDOM leadership concerning racial stereotyping and discriminatory treatment, including through her August 11, 2025 resignation letter. Crape and Murrell opposed alleged racial discrimination through the December 22, 2025 written notice delivered to WISDOM's executive and governing leadership.

96. Following Perkins's resignation, WISDOM distributed communications to employees and statewide Affiliate representatives attributing payroll difficulties to WAN leadership, including the executive position held by Perkins. Perkins alleges that the communications were materially adverse to her professional standing and were made because she had opposed racial discrimination during her employment.

97. On December 23, 2025, WISDOM restricted access to the Milwaukee office used by Crape and Murrell, one day after receiving their formal discrimination complaints. Crape subsequently filed an EEOC charge, received disciplinary action, and was terminated on June 15, 2026.

98. Plaintiffs allege that the challenged actions were materially adverse, were caused by their protected opposition to racial discrimination, and would not have occurred in the same manner absent that protected activity.

99. Defendant thereby violated Title VII's prohibition against retaliation, causing Plaintiffs individualized economic and noneconomic injuries.

**COUNT 5 – INTENTIONAL RACE DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF EMPLOYMENT CONTRACTS (42 U.S.C. § 1981)**

**Plaintiffs Yolanda Perkins, Viva Crape, and David Murrell against Defendant WISDOM, Inc.**

100. Plaintiffs reallege and incorporate by reference paragraphs 1 through 78 of this Complaint as though fully set forth herein.

101. Plaintiffs maintained contractual employment relationships with WISDOM and were entitled to equal treatment in the benefits, privileges, terms, and conditions of those relationships without racial discrimination.

102. WISDOM intentionally impaired Plaintiffs' contractual employment rights through discriminatory compensation, interference with assigned responsibilities and professional authority, unequal employment conditions, and Crape's termination.

103. Plaintiffs allege that race was a but-for cause of the challenged contractual injuries and that they would not have experienced the same treatment absent racial discrimination.

104. WISDOM thereby violated 42 U.S.C. § 1981, causing Plaintiffs economic and noneconomic injuries.

**COUNT 6 – RETALIATION AFFECTING EMPLOYMENT CONTRACTUAL RIGHTS (42 U.S.C. § 1981)**

**Plaintiffs Yolanda Perkins, Viva Crape, and David Murrell against Defendant WISDOM, Inc.**

105. Plaintiffs reallege and incorporate by reference paragraphs 1 through 78 of this Complaint as though fully set forth herein.

106. Plaintiffs opposed alleged racial discrimination affecting their contractual employment rights, including unequal compensation, discriminatory working conditions, and interference with employment responsibilities.

107. Following Perkins's protected opposition to racial discrimination, WISDOM distributed communications concerning WAN's financial decisions that Perkins alleges targeted her professional standing after she left WISDOM. Perkins alleges that these communications were intended to penalize her for opposing racial discrimination during her contractual employment relationship.

108. Following Crape's and Murrell's protected opposition, WISDOM restricted access to their established workplace. WISDOM subsequently disciplined and terminated Crape's employment.

109. Plaintiffs allege that the challenged actions were materially adverse, were caused by their opposition to racial discrimination affecting contractual employment rights, and would not have occurred absent that opposition.

110. Defendant thereby retaliated against Plaintiffs in violation of 42 U.S.C. § 1981, causing individualized economic and noneconomic injuries.

**COUNT 7 – DEFAMATION UNDER WISCONSIN COMMON LAW**

**Plaintiff Viva Crape against Defendant WISDOM, Inc.**

111. Plaintiff realleges and incorporates by reference paragraphs 1 through 78 of this Complaint as though fully set forth herein.

112. On approximately November 11, 2025, Interim Executive Director Kina Collins distributed a statewide written communication identifying Crape by name and accusing her of

disregarding instructions, engaging in "consistent undermining and lack of professionalism," and causing recurring invoicing deficiencies.

113. Crape alleges that the communication conveyed materially false factual implications concerning her professional conduct and responsibility for organizational financial deficiencies, despite WISDOM's knowledge of longstanding accounting problems and her request for guidance.

114. Collins published the challenged statements to statewide organizational representatives while acting within the scope of her executive responsibilities. Crape alleges that Collins knew Crape had sought guidance concerning the payroll instructions and that organizational leadership was aware of longstanding invoicing deficiencies extending beyond Crape's responsibilities. Crape further alleges that the communication attributed those deficiencies to her without adequately distinguishing her conduct from the organization's broader administrative failures and exceeded what was reasonably necessary to communicate payroll procedures.

115. Crape alleges that the statements were defamatory, caused reputational injury, and are attributable to WISDOM under Wisconsin law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendant WISDOM, Inc., awarding, as applicable to each Plaintiff and each established cause of action:

A. Declaratory and appropriate injunctive relief for violations of Title VII and 42 U.S.C. § 1981;

B. Back pay, discriminatory wage differentials, lost employment benefits, and prejudgment interest where authorized;

C. Reinstatement, front pay, or other appropriate equitable relief;

D. Compensatory damages for emotional distress, reputational injury, and other legally recoverable losses;

E. Punitive damages where authorized by law and supported by the evidence;

F. Reasonable attorney's fees, litigation expenses, taxable costs, and post judgment interest; and

G. Such other relief as the Court deems just and proper.

Plaintiffs seek individualized relief according to the claims and injuries established for each Plaintiff and do not seek duplicative recovery for the same injury under multiple causes of action.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution, Plaintiffs demand trial by jury on all issues so triable as of right.

Dated this 23rd day of November, 2026

Respectfully Submitted,

EAU CLAIRE LEGAL LLC

/s/ David Carlson
David Carlson
Attorney at Law
Eau Claire Legal LLC
405 S. Farwell St., Suite 6
Eau Claire, WI 54701
david@eauclaire.legal
(715) 495-7445
WI SBN: 1138342

Attorney for Plaintiffs